**David M. MILLER, Plaintiff,**

v.

**CROWN AMUSEMENTS, INC. and Dewey Lee Futch, Defendants.**

No. CV 492–228.

United States District Court, S.D. Georgia, Savannah Division.

April 6, 1993.

Gilbert Laird Stacy, Jones, Boykin & Associates, Savannah, GA, John Huggard, Raleigh, NC, for David E. Miller.

Joseph A. Mulherin, III, Frank Wilkens Seiler, Bouhan, Williams & Levy, Savannah, GA, for Crown Amusements, Inc. and Dewey Lee Futch.

A. Mark Lee, Barrow, Sims, Morrow & Lee, Savannah, GA, for State Farm Mutual Auto Ins. Co.

## ORDER

EDENFIELD, Chief Judge.

The Plaintiff moves the Court to render a pretrial determination of the admissibility of a 911 phone call made by an unidentified person shortly after an accident occurred. For reasons stated below, the Court finds that this evidence falls within the present sense exception to the hearsay rule, and, therefore, finds that this evidence is **ADMISSIBLE.**

## FACTS

On October 14, 1990, the Plaintiff, David Miller, and his sister-in-law, Linda Carper, were travelling south on Interstate-95 ("I-95"), near Pooler, Georgia, when they observed a pick-up truck on the side of the highway. Upon stopping to render assistance, Miller and Carper discovered that the driver of the truck, Charles Shideler, needed a spare part, which Miller had at his residence. Miller and Carper drove to Miller's house to obtain the part and returned. Miller and Shideler then began work on the left rear wheel of Shideler's truck, while Carper stood at the front of the truck. While the men were repairing the wheel, a trailer truck drove by, striking Shideler, and possibly Miller.[1] Miller suffered various injuries, including a broken leg; Shideler was killed. The truck did not stop; in addition, Carper did not observe the accident.

After asking Miller and Shideler whether they were injured, Carper, a Pooler resident, immediately drove south on I-95; exited at the Savannah exit on I-16; exited I-16 at the I-95 North exit; and travelled I-95 North to Georgia Highway 80 to the Gate Exxon station in Pooler, where she called 911. According to Chatham County Police records, Carper's call was made at 12:11:43 P.M. (Pl.'s Reply to Def.'s Br. in Opp'n, Ex. G.) Driving at speeds not exceeding 60 miles per hour, the approximate time to travel Carper's route, 4.5 miles, is 6 and a half minutes. (Pl.'s Reply to Def.'s Br. in Opp'n, Ex. E.)

Chatham County Police received another 911 call, from an unidentified caller at a pay phone at Mac's Oasis Chevron, located at I-95 and Georgia 204, at 12:13:53 P.M. (Pl.'s Reply to Def.'s Br. in Opp'n, Ex. G.) Calls to 911 are automatically recorded, and the fol-

---

1. Miller has testified that he is not certain whether he was struck by the truck or by Shideler.

lowing is a transcription of the entire dialogue.

DISPATCHER: How can I help you?

CALLER (FEMALE): Good afternoon, I'm on Highway 95 South and I was in quite a bit of heavy traffic, when we noticed a truck which was pulling a trailer, but I couldn't get a license number because of the trailer and the heavy traffic, but it said "Crown Amusements" on the side of the truck and as he went by a broken down truck, two vehicles were broken down by the side of the road and the young man was kneeling beside it and one was underneath. And as he went by he sideswiped and hit one of the young men. He made no attempt to stop. This was in the area of mile marker 99 or 98, perhaps between the two. Ah, this is my first opportunity to reach a phone.

DISPATCHER: Okay, there is—he sideswiped a person or vehicle?

CALLER: There are two vehicles there now.

DISPATCHER: Yes, ma'am, I've got that. I need to know whether he hit the vehicle or a person.

CALLER: The person.

CALLER: O.K., now I don't know if they will call through or not, but that's all I can tell you about the truck that did it. It said "Crown Amusement."

DISPATCHER: O.K.

CALLER: Have you got everything?

DISPATCHER: Yes, ma'am.

CALLER: Alright, thank you.

DISPATCHER: Alright, you're welcome.

(Pl.'s Mot. for Pretrial Determination at 2.)

The distance from the incident to where this second call was placed is 6.3 miles, which would require approximately 8 minutes, 45 seconds to travel, driving at speeds not exceeding 60 miles per hour. (Pl.'s Reply to Def.'s Br. in Opp'n, Ex. E.) In addition, there are no observable businesses, stores, houses, or pay phones on I-95 south between the incident location and Georgia 204 and I-95. (Pl.'s Mot. for Pretrial Determination at 3.)

## DISCUSSION

■ The Defendant argues that the recording of the 911 call made by the unidentified caller is inadmissible hearsay. The Plaintiff, however, asserts it is admissible as a present sense impression under Rule 803(1) of the Federal Rules of Evidence, which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.

FED.R.EVID. 803(1). Three requirements must be satisfied before this exception may be applied: (1) the statement must describe or explain the event at issue; (2) the declarant must have seen the event; and, (3) the statement must be substantially contemporaneous with the event. FED.R.EVID. 803(1), Advisory Committee's Notes; 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(1)[01] (1992).

With regard to the first criterion, the 911 caller's remarks describe or explain conditions surrounding the accident. The date and time of the call, the caller's description of the accident, and the circumstances of the accident all point to the fact that the caller described this particular accident. Moreover, the Defendant has brought no evidence before the Court indicating that the accident the caller described was not that involving Miller and Shideler. Accordingly, the Court finds that the call satisfies the first requirement of 803(1).

■ Secondly, the Court must find by a preponderance of the evidence that the declarant observed the incident. FED.R.EVID. 803(1). *See also Miller v. Keating,* 754 F.2d 507, 511 (3d Cir.1985); *Ramrattan v. Burger King Corp.,* 656 F.Supp. 522, 528 (D.Md. 1987). When a declarant is an unidentified bystander, a court should be hesitant to uphold the statement of the declarant as sufficient to demonstrate that the declarant actually perceived the incident. FED.R.EVID. 803(1), Advisory Committee's Note. Howev-

er, "direct proof of perception, or proof that forecloses all speculation is not required." *Miller*, 754 F.2d at 511. Indeed, in *Miller*, the Third Circuit Court of Appeals observed that a statement such as "I saw that ... truck run down the lady...." may stand alone to show perception, if the trial judge finds, from the particular circumstances, that he is satisfied by a preponderance of the evidence that the declarant spoke from personal perception. *Id.; see also Ramrattan*, 656 F.Supp. 522, 528 ("[T]his Court infers that if three [unidentified] individuals chose to tell [the driver] what had happened, then it is likely they saw the accident....").

■ Because the declarant who made this call is unidentified and is unavailable to testify, this issue presents a difficult matter to the Court. After careful consideration, however, the Court finds by a preponderance of the evidence that the declarant observed the accident. The caller specifically stated, "[W]e *noticed* [the truck sideswipe a person]," thus indicating actual perception of the accident. Furthermore, the timing of the declarant's call, which was received approximately 2 minutes after the call placed by Carper, who was at the scene of the accident, strongly suggests that the declarant observed the accident. This 2 minute interval is consistent with the differences in distances and in driving times to each calling location.

Furthermore, the caller's statements indicate that she was travelling south on I–95 and exited at Highway 204. The caller said, "[T]his is my first opportunity to reach a phone," which would be accurate if she travelled on I–95 to Highway 204, as there are no phones along I–95 and no buildings until the Interstate intersects Highway 204. In addition, the caller's incorrect identification of the mile marker [2] is consistent with her having travelled this route. There is no mile marker 99 because of the I–16 and I–95 interchange, and the next posted mile marker reads 98. The caller would have had no reason to have been looking for mile markers until being startled by the incident. The Court also observes that, in this situation, due to tape recording, there is no uncertainty as to the content of the declarant's statement, which serves to heighten the reliability of the evidence. Accordingly, the Court finds by a preponderance of the evidence that the caller actually perceived the event.

Rule 803(1) also requires that the description of the event be substantially contemporaneous with the event. FED.R.EVID. 803(1), Advisory Committee's Note. The Advisory Committee, however, observed that "in many, if not most, instances precise contemporaneity is not possible, and hence a slight lapse is allowable." *Id.* The Seventh Circuit has held that a time period potentially as large as 23 minutes may be within the scope of the "substantially contemporaneous" standard. *U.S. v. Blakey*, 607 F.2d 779, 786 (7th Cir.1979). In another case, however, the D.C. Circuit Court of Appeals held that statements that were made at least 15 minutes—and possibly up to 45 minutes—after an accident did not satisfy the "substantially contemporaneous" standard, and, therefore, did not come within the present sense impression exception. *Hilyer v. Howat Concrete Co., Inc.*, 578 F.2d 422, 426 n. 7 (D.C.Cir.1978).[3]

■ In this case, all of the evidence indicates that the statements made by the declarant occurred less than ten minutes after the accident. As noted above, Carper has stated that, after briefly checking to determine whether Miller and Shideler were injured, she immediately left the accident scene for help; according to Chatham County Police records, her call was made at 12:11:43 P.M. The declarant placed her call 2 minutes, 10 seconds after Ms. Carper's call. Thus, the declarant's call occurred, in all likelihood, less than 10 minutes after the incident. Accordingly, the Court finds that

---

2. The caller stated that the accident took place "in the area of mile marker 99 or 98." In actuality, the accident occurred within 100 yards south of marker 100.

3. In addition, the Court observes that the Eleventh Circuit has held that statements made by an unidentified declarant approximately 10 to 15 minutes after an accident satisfied Georgia's *res gestae* requirement that the statement be "spontaneous" and a "natural result of the incident." *Williams v. Melton*, 733 F.2d 1492, 1495, *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984).

the declarant's call was substantially contemporaneous with the accident, and, therefore, that the call satisfies the three requirements of Rule 803(1).

## CONCLUSION

The Plaintiff has moved the Court to rule upon the admissibility of a call placed to 911 shortly after an accident in which the Plaintiff was injured. The Court finds by a preponderance of the evidence that the caller described the accident; that she actually observed the incident; and that the statement was substantially contemporaneous with the event. Accordingly, the call is **ADMISSIBLE,** under Federal Rule of Evidence 803(1) as a present sense impression.

SO ORDERED.