IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CANDY AND STEVE BREEDEN, wife and husband, | ) ) ) | No. 32813-9-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| MEAD HIGH SCHOOL DISTRICT #354 and MEAD HIGH SCHOOL, | ) ) ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Trial of Candy and Steve Breeden's personal injury action arising out of Ms. Breeden's slip and fall at Mead High School resulted in a defense verdict. The Breedens challenge the trial court's exclusion of evidence of statements made by an unidentified witness to the fall. We find no error or abuse of discretion and affirm.

## FACTS AND PROCEDURAL BACKGROUND

In the spring of 2009, Candy Breeden's son transferred to Mead High School and on May 14 she accompanied him to the school to check in. While there, Ms. Breeden walked down a hall alongside the school's cafeteria, on her way to speak to the parking attendant about where her son should park his car. Passing by the cafeteria, she slipped

and fell. According to Ms. Breeden, there was water on a large area of the floor—too large to have been caused by a spill—and her clothes were left soaking wet. From her own experience with domestic chores, she concluded the floor had just been mopped. No "Wet Floor" signs were present nor had the wet area been taped off.

Immediately after the fall, an unidentified woman whom Ms. Breeden described as between 15 and 25 years old ran over and helped her up. Ms. Breeden claims the woman said, "They just mopped the floor" and, "[T]his happens all the time," while helping Ms. Breeden to her feet. Clerk's Papers (CP) at 26. After the fall, Ms. Breeden was in pain and struggling to hold back tears but she continued to the parking lot, where the attendant encouraged her to file an incident report with the school administrative office before leaving. Ms. Breeden did, mentioning in her report that a student had witnessed the event. She described the accident as follows: "walking down hall[,] floor was just mopped. I slipped and fell on back." CP at 34.

Before trial, the school district moved the court to exclude any mention of the statements alleged to have been made by the witness, whose identity remained unknown. The Breedens responded that while hearsay, the statements were admissible under the present sense impression and excited utterance exceptions to the hearsay rule.

The trial court sustained the school district's objection to evidence of the statements, explaining that while such statements can come in "even though we have no idea who a declarant might be . . . I have to have more of a foundation than I think I have

2

here." Report of Proceedings (RP) at 125-26. Addressing the hearsay exception for present sense impressions, the court observed, "I don't know [whether] the statement about the mopping was made . . . one minute after the supposed mopping happened or 30 minutes ago." *Id.* at 126. Addressing the hearsay exception for excited utterances, it stated that while *Ms. Breeden* was "certainly under the stress of a very difficult event for her . . . I have no foundation to know whether the person that said this actually saw her fall . . . or whether they were, like I said, looking in another direction." *Id.* at 126-27.

At the conclusion of trial, the jury returned a defense verdict. Ms. Breeden appeals.

## ANALYSIS

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless it falls under an exception or exclusion to the hearsay rule. ER 802. The Breedens contend that the statements of the unidentified witness were admissible under ER 803(a) as a present sense impression or an excited utterance. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." ER 803(a)(1). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." ER 803(a)(2).

3

The Breedens contend the trial court committed legal error or abused its discretion in sustaining the school district's objection to the evidence. Generally, we review the trial court's admission of evidence for abuse of discretion, but whether a rule of evidence applies in a given factual situation is a question of law that we review de novo. *State v. Chambers*, 134 Wn. App. 853, 858, 142 P.3d 668 (2006).

We find no legal error by the trial court. Even where a statement is admissible as an exception to the hearsay rule, it may be inadmissible for other reasons. 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 802.3 (5th ed. 2007). A declarant's lack of personal knowledge is one such reason. Hearsay declarants must have personal knowledge of what they assert in order for their declarations to be admissible. *See* FED. R. EVID. 803, advisory committee's note, 56 F.R.D. 183, 303 (1973) ("In a hearsay situation, the declarant is, of course, a witness, and neither this Rule nor Rule 804 dispenses with the [Rule 602] requirement of firsthand knowledge.").

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." ER 602. The trial court properly considered whether the Breedens presented sufficient evidence of the unidentified witness's personal knowledge. It recognized that the witness's statements could themselves be considered as possible evidence of personal knowledge. Because there was no legal error, we consider whether the trial court abused

4

its discretion in determining that the Breedens did not establish a foundation for the statements.

Ms. Breeden argues that "'[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about.'" Br. of Appellant at 16 (quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)). But *Hickey* involved the clearly distinguishable context of a witness who was identified, on the stand, and claimed personal knowledge—at issue was whether his drug addiction and inconsistency justified excluding his testimony *despite* his claim of personal knowledge. The case does not hold that where, as here, an unidentified hearsay declarant's statements are at issue, the court must infer the declarant's personal knowledge unless no reasonable juror could infer it.

On facts substantially similar to those at issue here, the federal district court in *Gainer v. Wal-Mart Stores East, L.P.*, excluded witness statements. 933 F. Supp. 2d 920 (E.D. Mich. 2013). Diane Gainer, who slipped and fell while entering a Wal-Mart store, testified that while several customers were helping her up they stated "'[other] people had came in and almost went down because they didn't have mats or cones out there'" and "'they [Defendant] were just mopping the [mother f—ing] floor.'" *Id.* at 923 (alterations in original). The court found the alleged statements to be inadmissible

5

hearsay because Ms. Gainer could not establish that the declarants had personal knowledge of the substance of their statements. *Id.* at 932.

Also, only Ms. Gainer and her daughter could testify to the hearsay. *Id.* at 931-32. The court stated: "Courts should be particularly vigilant in policing the personal knowledge requirement where the only witness able to testify to a statement made by an unidentified declarant is a party in interest." *Id.* at 931. In fact, even where the declarant is identifiable, courts "hesitate to allow the declarant's statement itself to provide the sole foundation for its own admissibility without some reliable corroborative evidence." *Id.* The court also noted that because one of the statements at issue was not about the exciting event (the fall), but about a "temporally separate and independent event—the alleged mopping," there was "a heightened concern for reliability and trustworthiness, as the event of mopping the floor, by itself, [was] not particularly noteworthy." *Id.* at 932.

Like the statements in *Gainer*, the alleged statement by the unidentified witness to Ms. Breeden's fall that "they just mopped," does not demonstrate the witness's personal knowledge—she did not say "*I saw* them mopping." Ms. Breeden argues the fact that the witness ran to her aid immediately after her fall indicates the witness saw her fall, but the statements Ms. Breeden seeks to admit are not about the fall, but rather about the mopping and falls that occurred in the past. The inferable fact that the witness saw Ms. Breeden fall does not tell us anything about the witness's personal knowledge of the substance of her statements.

6

Cases on which Ms. Breeden relies are distinguishable. In *Miller v. Crown Amusements, Inc.*, the court found testimony from an unidentified 911 caller about the circumstances of an accident admissible as a present sense impression. 821 F. Supp. 703, 704 (S.D. Ga. 1993). In concluding that the personal knowledge of the caller had been established, the court found the following important: that the caller stated "'we *noticed*'" the accident, indicating actual perception; that the call was placed two minutes after another 911 call made by someone at the scene of the accident, the amount of time it would take for a driver to get from the accident to the next available public telephone; that the caller's statement about where the accident occurred was consistent with her having driven that route and witnessed the accident; and, because the 911 call was recorded, its content was not in doubt. *Id.* at 705-06 (emphasis added).

In *Lindsay v. Mazzio's Corp.*, the plaintiff slipped and fell at a restaurant. 136 S.W.3d 915, 918 (Mo. Ct. App. 2004). At trial, the court admitted testimony that an unidentified diner ("the observer") had stated, "'That floor is wet there,'" immediately after the plaintiff slipped. *Id.* There was evidence of the observer's vantage point: she was "'sitting at a table right beside the spot where [the plaintiff] fell.'" *Id.* at 919. And the statement was not about earlier events or prior accidents, but was her present sense impression "describ[ing] what the observer was seeing at the time." *Id.* at 923.

In *H.E.B. Food Stores v. Slaughter*, the plaintiff slipped and fell on water and loose grapes in a grocery store. 484 S.W.2d 794, 795 (Tex. App. 1972). The court

7

admitted the plaintiff's testimony that an unidentified store employee spontaneously said, "'She fell on those grapes.'" *Id.* at 797. The court inferred the employee's personal knowledge that loose grapes were on the floor from evidence that the plaintiff had seen him nearby, unloading produce, and it was the employee's immediate explanation of why the plaintiff fell. *Id.*

In *Sanitary Grocery Co. v. Snead*, the plaintiff slipped and fell on spinach and loose grapes on the floor in a grocery store. 67 App. D.C. 129, 90 F.2d 374, 375 (D.C. Cir. 1937). The court admitted the testimony of a witness who saw the plaintiff's fall and testified that "'one of the boys, the clerks, went and picked her up . . . and said, "That has been on the floor for a couple of hours,"'" and that "'he ha[d] been so busy that he ha[d] not had a chance to clean it up.'" *Id.* No challenge was made to the clerk's personal knowledge, which could be inferred from the evidence that he was on duty and admitted knowing of the produce and failing to clean it up.

Finally, in *David by Berkeley v. Pueblo Supermarket of St. Thomas*, the plaintiff, who was eight months pregnant, slipped, while grocery shopping, on cottage cheese, falling directly on her stomach. 740 F.2d 230, 232 (3d Cir. 1984). The court admitted hearsay testimony that a nearby shopper (in this case identified, but not called as a witness) said, after the fall, "'I told them to clean it up about two hours ago—an hour and

a half ago.'" *Id.* at 234. Here again, no challenge was made to personal knowledge, which was implicit ("*I* told them to clean it up . . . .").[1]

Here, the unidentified witness did not disclose a basis for her knowledge that "they just mopped"; there is no evidence she was a school custodial employee engaged in cleaning the immediate vicinity, from which personal knowledge might be inferred; there was no indication of where she was when Ms. Breeden fell other than that she ran over; and the only evidence of her statement comes from Ms. Breeden, who has an interest in the content of the statement.

Any present sense impression on the part of the unidentified witness would be of the wet floor or the fall, since there was no evidence that the witness perceived the earlier mopping or prior accidents. Finally, the statement, "This happens all the time," tends to belie the argument that Ms. Breeden's fall was, from the perspective of the witness, a "startling event . . . made . . . under stress of excitement."

---

[1] As pointed out by the defense, the appellate court in *David by Berkeley* concluded the trial court would not have abused its discretion by *excluding* the testimony:

> Even though he reached the very outer bounds of his permissible discretion and even though as trial judges we may have ruled differently, we hold that the trial judge did not commit reversible error in admitting [the shopper's] statement under the excited utterance exception.

*Id.* at 235.

9

No. 32813-9-III
*Breeden v. Mead H.S. District #345*

For all of these reasons, the Breedens fail to demonstrate that the trial court abused its discretion in sustaining the hearsay objection.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

10